UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICHOLAS A. DOUTHWAITE,

    Plaintiff,

v.                                           Case No. 1:22-cv-873

COMMISSIONER OF SOCIAL            Hon. Jane M. Beckering
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner). In this partially favorable decision, the Commissioner denied plaintiff's claim for disability insurance benefits (DIB), but found that plaintiff was disabled for purposes of his supplemental security income (SSI) commencing on March 24, 2021.

Plaintiff's case has a lengthy procedural history. Plaintiff filed his claims on February 5, 2019, and alleged a disability onset date of October 12, 2017. PageID.44, 486-489. In his disability report, plaintiff identified 10 physical or mental conditions which limited his ability to work. PageID.491.[1] Plaintiff stated that he completed the 12th grade, had additional certification as a die caster, and had past employment in die casting and stamping. PageID.492-493. After a hearing, Administrative Law Judge (ALJ) William G. Reamon found that plaintiff

---

[1] Plaintiff listed the following medical conditions: (1) chronic back pain with bilateral lower extremity radiculopat [sic]; (2) lumbar spondylosis, central disc herniation L4-L5; (3) spinal canal stenosis; (4) foraminal stenosis bilaterally L5-S1; (5) herniated discs C5-C6, C6-C7; (6) degenerative disc disease; (7) left shoulder impingement syndrome; (8) major depressive disorder; (9) anxiety; and, (10) attention deficit hyperactivity disorder (ADHD).  PageID.491.

1

was not disabled from October 12, 2017, through February 27, 2020 (the date of the decision). PageID.219. On December 15, 2020, the Appeals Council remanded the case back to the ALJ. PageID.228-229.

ALJ Sarah R. Smisek held another administrative hearing and evaluated plaintiff's claim on remand. PageID.44-58, 71-99. In her decision, ALJ Smisek noted that "[i]n its remand order, Appeals Council directed the undersigned to more thoroughly address carpal tunnel syndrome and the use of an assistive device." PageID.44. ALJ Smisek reviewed plaintiff's claim *de novo* and entered a written decision on June 25, 2021. PageID.44-58. As discussed, *supra*, this decision denied plaintiff's DIB claim, but found that he was disabled of purposes of his SSI claim commencing on March 24, 2021. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent

>her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.    ALJ's DECISION

As discussed, the ALJ found that plaintiff was disabled as of March 24, 2021. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 12, 2017, and met the insured status requirements of the Social Security Act through September 30, 2020. PageID.47. At the second step, the ALJ found that plaintiff has severe impairments of: lumbar spine disc displacement (post-lumbar fusion) and lumbar spine stenosis; left shoulder impingement syndrome (status-post arthroscopy); depressive disorder; anxiety disorder; cervical spondylosis; acromioclavicular (AC) joint osteoarthritis; carpal

tunnel syndrome; and opioid addiction. PageID.47. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.*

At the fourth step, the ALJ made two findings with respect to plaintiff's residual functional capacity (RFC). Prior to March 24, 2021, the ALJ found that,

> the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except frequently but not constantly push/pull with the left upper extremity; occasionally reach overhead bilaterally; frequently but not constantly handle and finger bilaterally; never climb ladders, ropes, or scaffolds; frequently stoop, kneel, crouch, crawl, and climb ramps or stairs; avoid concentrated exposure to dangerous moving machinery and unprotected heights; simple, routine, repetitive work; have no more than occasional general public interaction; can tolerate occasional work setting/work process adjustments; no rapid-paced, production quota-based work; and requires a cane to ambulate to the work station (20 CFR 404.1567 and 416.967).

PageID.49.

Second, beginning on March 24, 2021, the ALJ found that,

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except occasionally push/pull with the left upper extremity; occasionally reach overhead bilaterally; occasionally handle and finger bilaterally; never climb ladders, ropes, or scaffolds; frequently stoop, kneel, crouch, crawl, and climb ramps or stairs; avoid concentrated exposure to dangerous moving machinery and unprotected heights; simple, routine, repetitive work; have no more than occasional general public interaction; can tolerate occasional work setting/work process adjustments; no rapid-paced, production quota-based work; and requires a cane to ambulate to the work station.

PageID.55.

The ALJ also found that since the alleged onset date, plaintiff was unable to perform any past relevant work. PageID.56.

At the fifth step, the ALJ made two findings to address the two RFCs. First, the ALJ found that:

> Prior to March 24, 2021, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

PageID.56.  During this time frame, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level in the national economy including inspector (52,000 jobs), parts sorter (65,000 jobs), and final assembler (70,000 jobs). PageID.56-57.

Second, the ALJ found that:

> Beginning on March 24, 2021, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

PageID.57.

Accordingly, the ALJ found that plaintiff "was not under a disability within the meaning of the Social Security Act at any time through the date last insured [of September 30, 2020] (20 CFR 404.315(a) and 404.320(b))." PageID.58.  Based on this finding, plaintiff would not be entitled to DIB.  PageID.58.

In addition, the ALJ found that plaintiff "was not disabled prior to March 24, 2021, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g))." PageID.58.  Based on this finding, plaintiff was disabled for purposes of SSI as of March 24, 2021.  PageID.58.[2]

Finally, the ALJ found that "[m]edical improvement is expected with appropriate treatment" and that "a continuing disability review is recommended in 18 months."  PageID.58.

---

[2] In this regard, the ALJ stated that, "The component of the Social Security Administration responsible for authorizing supplemental security income will advise the claimant regarding the nondisability requirements for these payments, and if eligible, the amount and the months for which payment will be made." PageID.58.

### III.  DISCUSSION

Plaintiff set forth one omnibus issue on appeal:

**The Commissioner erroneously failed to give appropriate weight to the opinions of the medical experts, violated agency rules, failed in his duties to provide a fair and full hearing and misapplied the law.**[3]

Plaintiff does not develop arguments that the Commissioner: violated agency rules; failed to provide him a fair and full hearing; or misapplied the law. The bulk of plaintiff's brief is a recitation of medical evidence. Plaintiff's Brief (ECF No. 10, PageID.1330-1340). In his brief, plaintiff contests the ALJ's evaluation of three medical opinions and the ALJ's finding that he become disabled as of March 24, 2021.

#### A.  Medical opinions

For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. §§ 404.1520c(b); 416.920c(b).

Here, plaintiff contends that ALJ erred in finding that Dr. Lahti's opinions "are not persuasive" and that the opinion of the non-examining State agency medical consultant Jennie Wentzloff, M.D. was "somewhat persuasive." Plaintiff's Brief at PageID.1340. Plaintiff cites no

---

[3] Plaintiff's counsel set forth the same omnibus issue in *Turner v. Commissioner of Social Security*, No. 1:21-cv-1055, 2022 WL 18275893 at *3 (Dec. 27, 2022), *R&R adopted* 2023 WL 172000 (W.D. Mich. Jan. 12, 2023). As in *Turner*, plaintiff's brief did not comply with the Court's direction that the initial brief "must contain a Statement of Errors, setting forth in a separately numbered section, each specific error of fact or law upon which Plaintiff seeks reversal or remand." *See* Notice (ECF No. 7, PageID.1320).

legal authority and presents a conclusory argument that "[a]s Claimant's PCP since 2014, Dr. Lahti is certainly in a better position to evaluate and opine on Claimant's medical complaints and physical limitations than a non-examining medical source." *Id*. Similarly, plaintiff states that "Orthopaedic Associates of Muskegon has provided care for the Claimant's orthopaedic needs since 2012" and that "[o]n June 7, 2019, Dr. Eyke [a physician at Orthopaedic Associates of Muskegon] recommended that Claimant pursue pain management treatment or a trial of dorsal column stimulation due to the Claimant's poor outcome status post lumbar surgery on May 4, 2018." *Id*. at PageID.1341. In short, plaintiff appears to disagree with the ALJ's findings that the opinions of Tyson Lahti, D.O. and Christopher Eyke. M.D. are not persuasive, and that the opinion of Jennie Wentzloff, M.D. was somewhat persuasive. Plaintiff's Brief at PageID.1340-1341.

The ALJ found that Dr. Wentzloff's opinion was somewhat persuasive, but did not accept the doctor's conclusion that plaintiff could perform light work:

> Jennie Wentzloff, M.D., a State agency medical consultant, opined the claimant could essentially perform at the light exertional level. He could frequently push/pull with the left upper extremity. The claimant could frequently stoop and climb ramps or stairs. He could occasionally kneel, crouch, and crawl. The claimant could never climb ladders, ropes, or scaffolds. Reaching overhead with the left upper extremity was limited to frequently. Finally, the claimant had to avoid concentrated exposure to hazards (Ex B3A and B4A).
>
> The opinion of Dr. Wentzloff is somewhat persuasive. The claimant consistently endorsed pain in the lower back throughout much of the record. He also had a lumbar function surgery within the period at issue. Likewise, he had surgery on the left shoulder. A need for surgical correction clearly supports a reduction in his overall physical functioning. However, the light exertional level described in the opinion is not consistent with the claimant's history of surgery on the cervical spine and his need for surgery on the left shoulder and lower back within the period at issue. The undersigned thus finds the claimant is somewhat more limited than determined by Dr. Wentzloff.

PageID.53.

The ALJ found that the extreme limitations set forth in Dr. Lahti's opinions were not persuasive based on plaintiff's recent activity:

> Tyson Lahti, D.O., a treating physician, completed multiple forms in the period prior to the established onset date. On these forms, Dr. Lahti generally opined the claimant could sit less than two hours and stand/walk less than two hours in an eight-hour workday. He could rarely to occasionally lift and carry less than 10 pounds. Additionally, the claimant required an "at will" sit/stand option, and he could never twist, crouch, or climb. He could only sit for 30 minutes or stand for 45 minutes at one time. He had to walk around every 30 minutes for 20 minutes each time. Finally, though not the last of the limitations provided by Dr. Lahti, the claimant would be off task 10 percent of the workday and would miss more than four days of work each month (Ex B5F, B10F/59-62, B19F, and B23F).
>
> More recently, in April 2021, Dr. Lahti, completed another form comprising an opinion. The doctor offered the claimant could sit less than two hours and stand/walk less than two hours in an eight-hour workday. He could rarely lift and carry less than 10 pounds. Additionally, the claimant could never crouch or climb and only rarely twist or stoop. He could only sit for 20 minutes or stand for 30 minutes at one time. He would require unscheduled breaks every 15 to 20 minutes, each lasting about 15 minutes. Moreover, the claimant could only use the upper extremities, at most, only 10 percent of the workday for reaching, gross manipulation, and fine manipulation. Finally, though not the last of the limitations provided by Dr. Lahti, the claimant would be off task 25 percent or more of the workday and would miss more than four days of work each month (Ex B32F).
>
> The opinions of Dr. Lahti are not persuasive. A treatment note dated only one day prior to one of these opinions showed the claimant was pushing things into a truck because he was moving (Ex B7F/26 and B11F/12). As previously discussed, although there are conflicting reports of exactly what the claimant was pushing into the truck, the activity of pushing items and his helping move things does not indicate he was nearly as limited as determined by Dr. Lahti. The opinion of Dr. Wentzloff is also more consistent with the record than are the opinions of Dr. Lahti. Considering the improved symptoms with surgery and the generally limited nature of the objective and radiographic findings during the period at issue, the evidence does not support the debilitating limitations offered by Dr. Lahti.

PageID.54.

Finally, the ALJ found that Dr. Eyke limited plaintiff's activities for a period of weeks after surgery in 2018:

> Christopher Eyke, M.D., opined the claimant could not lift over five pounds. He had to avoid repetitive bending or twisting. The claimant could not drive until

9

>released by his physician. He could do no housework for six weeks, after which he could do light housework such as dishes and dusting (Ex B12F/6). This assessment is not persuasive. The limitations were provided by the doctor after the claimant's surgery in May 2018, and the limitations were not expressly meant as ongoing restrictions as evidenced by the indication they were only to persist until released by a physician.

PageID.54-55.  In this regard, plaintiff was to see Dr. Eyke in 10-14 days and Dr. Lahti in 10-14 days.  PageID.1122.

Here, the ALJ's evaluations of the opinions of Drs. Wentzloff, Lahti, and Eyke were supported by substantial evidence. Plaintiff's disagreement with the ALJ's decision "does not mean that the decision is unsupported by substantial evidence." *Justice v. Commissioner of Social Security Administration*, 515 Fed. Appx. 583, 588 (6th Cir. 2013).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the ALJ's decision.  *See Willbanks*, 847 F.2d at 303.  Accordingly, this claim of error should be denied.

### B.      Disability date

Finally, plaintiff contends that "there is no justification nor logic for the Commissioner assigning a date of onset of March 24, 2021."  Plaintiff's Brief at PageID.1341. Contrary to plaintiff's contention, the ALJ explained that the March 24, 2021 finding arose from Dr. Bakker's examination of plaintiff on that date which led to a decision to perform surgery:

>On the established onset date, March 24, 2021, there were some additional examination findings of the left shoulder on physical examination.  Additional radiographs later corroborated these findings (Ex B24F; B33F; B29F/5-6; B35F/1 and 4). The increased findings on examination and subsequent radiographic studies demonstrates objective worsening of the claimant's left shoulder problem as of March 24, 2021, which supports an overall decrease of upper extremely functioning to only an occasional basis rather than up to a frequent basis as defined in the residual functional capacity related to the period before March 23, 2021. However, the other evidence of record does not demonstrate that he was as limited prior to the established onset date.

PageID.55.

On March 24, 2021, plaintiff appeared for a left shoulder follow-up with Dirk A. Bakker, M.D. PageID.1300 (Exh. 29F/5). The doctor noted "[l]eft shoulder impingement syndrome, symptomatic AC osteoarthritis and biceps tendinitis" and addressed corrective surgery:

> We discussed treatment options. Previous injection gave short-term relief only. I believe more of his symptomatology now related to the AC osteoarthritis and biceps tendinitis which he did not have previously. He is looking for more permanent solution. He fully understands all risks and benefits of left shoulder arthroscopy with subacromial decompression, distal clavicle excision and mini open biceps tenodesis. This will be performed as an outpatient under general anesthetic with interscalene block. Doubt rotator cuff, ligamentous or labral pathology. Risks and benefits of the procedure were explained to the patient. All questions were answered and patient would like to proceed. Patient to return 2 weeks after surgery.

PageID.1301 (Exh. 29F/6). On April 13, 2021, Dr. Bakker noted that "Patient has recurrence of symptoms about his shoulder necessitating return to the OR years after his initial surgery" and that "An MRI has been ordered as dictated by his insurance but no pathology changing the operative plan is expected." PageID.1319 (Exh. 35F/4).

On May 19, 2021, Dirk A. Bakker, M.D., noted plaintiff's scheduled surgery after review of an MRI of plaintiff's left shoulder taken on May 5, 2021 (PageID.1310-1311, Exh. 33F):

> Patient was scheduled for follow-up today after MRI. This visit is unnecessary as previous diagnosis is known and plan for surgery was established. Review of MRI left shoulder 5/5/21 shows mild rotator cuff tendinitis consistent with known Impingement syndrome small partial-thickness tearing. We will proceed as scheduled with left shoulder arthroscopy with subacromial decompression, distal clavicle excision and mini open biceps tenodesis if insurance approves.

PageID.1316 (Exh. 35F/1). For these reasons, the ALJ's decision to find plaintiff disabled as of March 24, 2021 is supported by substantial evidence. Accordingly, this claim of error should be denied.

### IV. RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Dated: November 3, 2023                         /s/ Ray Kent
                                                RAY KENT
                                                United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).